194 So.2d 221 (1967)
Charles E. KLUMB
v.
Mrs. Evelyn Gay Bishop KLUMB, Dr. W.L. Jaquith and H.J. Bishop.
No. 44218.
Supreme Court of Mississippi.
January 23, 1967.
*222 Henley, Jones & Henley, Hazlehurst, for appellant.
Armstrong & Hoffman, Hazlehurst, for appellees.
ROBERTSON, Justice:
The Chancery Court of Copiah County, Mississippi, on January 29, 1966, granted Mrs. Evelyn Gay Bishop Klumb a divorce from Charles E. Klumb on the ground of wilful, continued and obstinate desertion for the space of more than one year. Finding that Mrs. Klumb was non compos mentis, and confined in the Mississippi State Hospital at Whitfield, Mississippi, the court ordered Mr. Klumb to pay $300 per month for her support and maintenance to her father, H.J. Bishop, her legally appointed guardian. The court also ordered Klumb to execute a performance bond in the sum of $25,000, conditioned upon his making said monthly payments for support, ordered him to furnish a $25,000 life insurance policy upon his life with Mrs. Klumb as beneficiary, and allowed $2,000 to the guardian of Mrs. Klumb as her counsel's fees.
The appellant assigns as error the action of the trial court in:
1. Ordering the appellant to furnish a life insurance policy on his life payable to Mrs. Klumb in the sum of $25,000, or in any amount.
2. Requiring the appellant to execute a bond in the sum of $25,000 conditioned on his making the monthly payments for her support and maintenance.
3. Ordering the appellant to execute a bond in an excessive amount.
4. Allowing attorneys' fees to appellee in an excessive amount.
In order to clearly understand the questions involved, it is necessary to set forth in chronological order the sequence of events.
On May 25, 1965, after a contested hearing, the Chancellor appointed H.J. Bishop, the father of Evelyn Gay Bishop Klumb, as her guardian. In the petition for appointment of a guardian, it was alleged that Mrs. Klumb had been continuously confined in the Mississippi State Hospital at Whitfield, Mississippi, for a period of more than one year and was still so confined, that she was of unsound mind, and mentally incapable of taking care of her estate. The prayer of the petition was that H.J. Bishop be appointed her guardian.
In his answer and cross-petition, Charles E. Klumb admitted that she was confined in the Mississippi State Hospital, was of unsound mind, mentally incapable of taking care of her estate and incapable of responding to process. Klumb denied that it was necessary to appoint a guardian assigning *223 as his reason that she had no estate and was confined in the Mississippi State Hospital. In the alternative, he prayed that he be appointed guardian rather than Mr. Bishop, her father.
On September 28, 1965, Klumb filed a bill of complaint for divorce against his wife on the ground of incurable insanity. He alleged in his bill that he was a resident citizen of Reno, Nevada, and in the prayer of the sworn bill, he prayed that "the court will adjudicate that the obligation of the complainant to support and maintain the defendant shall not be altered in any way by the granting of the divorce and that the court will designate the amount of bond, if any, for the complainant to execute, to be approved by the court, designated for the care and keeping of the defendant during the remainder of her natural life."
With the approval of the chancery court, Bishop, as guardian of Mrs. Klumb, filed an answer and cross-bill on October 5, 1965, wherein he prayed that Mrs. Klumb be granted a divorce on the ground of desertion, that "Cross-Defendant be required to enter into a bond, to be approved by the Court, in an amount conditioned and sufficient for the care and keeping of the Cross-Complainant during the remainder of her life."
In between the filing of these pleadings for divorce and the hearing on the cross-bill for divorce, a petition for an injunction was filed by the guardian of Mrs. Klumb because appellant had sent movers to Crystal Springs, Mississippi, to remove all the furniture and household equipment to Reno, Nevada. The Chancellor granted an injunction on December 20, 1965.
On the same day, a motion for a non-suit was filed by Klumb, and a voluntary non-suit was attempted to be taken by a notation written on the face of the bill of complaint by the attorney for the appellant. A full and detailed motion to set aside the voluntary non-suit and for an injunction to restrain Klumb from filing a divorce suit in the State of Nevada or in any other state was filed on December 23, 1965. On the same day interrogatories to be propounded to Charles E. Klumb were filed by the attorneys for the guardian.
On December 30, 1965, the Chancellor entered decrees setting aside the voluntary non-suit, and enjoining the complainant from filing suit for divorce against Evelyn Gay Bishop Klumb in any other jurisdiction.
It was against this backdrop of turbulent history of domestic difficulteis that the Chancellor tried this complicated and difficult suit. He granted the prayer of the cross-complainant for divorce on the ground of desertion, provided $300 per month for her support and maintenance and attempted to secure the payment of the monthly support and maintenance for her natural life with a $25,000 performance bond and a $25,000 life insurance policy.
Section 159 of the Mississippi Constitution of 1890 provides:
"The chancery court shall have full jurisdiction in the following matters and cases, viz.

(a) All matters in equity;
(b) Divorce and alimony;

(c) Matters testamentary and of administration;
(d) Minor's business;
(e) Cases of idiocy, lunacy, and persons of unsound mind;

(f) All cases of which the said court had jurisdiction under the laws in force when this Constitution is put in operation." (Emphasis added.)
It is apparent from a recitation of the chronological history of this case and the jurisdiction of the chancery court as contained in Section 159, supra, that the Chancellor was acting in two capacities in the trial of this case. Under the Mississippi *224 Constitution, he was the superior guardian of a person of unsound mind and he was also the court charged with the duty and responsibility of trying and deciding a divorce and alimony case. Section 2743, Mississippi Code of 1942 Annotated (Recompiled 1956), further elaborates on the duties and responsibilities of a Chancellor in divorce cases when it provides:
"When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, having regard to the circumstances of the parties and the nature of the case, as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage, and also touching the maintenance and alimony of the wife, or any allowance to be made to her, and may, if need be, require sureties for the payment of the sum so allowed; and the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require." (Emphasis added.)
The testimony was that cross-defendant, Charles E. Klumb, was a good business man, had made in excess of $20,000 a year for the past few years and was worth about $200,000. Mr. Klumb in his answer to the interrogatories propounded to him did state that "his properties had been attached in an attachment suit against him for $200,000", that he owned life insurance policies that had a cash value of approximately $20,000, which policies had been assigned to the Truckers Exchange Bank of Crystal Springs, Mississippi, to secure a loan in the amount of $15,500. He further stated in his answer that he had no intention of returning to Mississippi to live and that it was his intention to keep his children, James Roy Klumb and Laura Lee Klumb, with him wherever he resided.
With reference to the life insurance feature of the decree of the Chancellor, it is interesting to note that counsel for Mr. Klumb in cross-examining Mr. Bishop, father and guardian of Mrs. Klumb, had this to say:
"Q. We spoke about the question of insurance, did you know Mr. Klumb does have a life insurance policy payable to Mrs. Klumb?
A. Oh, I wouldn't have any occasion to know that.
Q. Did you know that in the proceedings here, that the record reveals that he does have a life insurance policy payable to Mrs. Klumb?
A. Mr. Henley I don't remember that. I remember he said he had set up something in case of his death, but I don't remember the details of it."
Mr. and Mrs. Klumb were married on October 15, 1955. She had borne him two children, James Roy Klumb born March 7, 1959, and Laura Lee Klumb born on April 1, 1960. She became incompetent and was confined in the Mississippi State Hospital at Whitfield, Mississippi, in 1961. It was during the course of her marriage that she became insane.
Acting in two capacities it was the duty and responsibility of the Chancellor to see that the insane wife of the appellant was supported and maintained during the remainder of her natural life. This was the clear purpose and intent of the Mississippi Legislature when it said in Section 2735, Mississippi Code of 1942 Annotated (Recompiled 1956):
"The status of the parties as to the support and maintenance of the insane person shall not be altered in any way by the granting of the divorce.

"However, in the discretion of the Chancery Court, and in such cases as the court may deem it necessary and proper, before any such decree is granted on the ground of incurable insanity, the complainant, when ordered by the court, shall enter into bond, to be approved by the court, in such an amount as the court *225 may think just and proper, conditioned for the care and keeping of such insane person during the remainder of his or her natural life, unless such insane person has a sufficient estate in his or her own right for such purpose." (Emphasis added.)
It was also the duty and responsibility of the Chancellor, as the superior guardian of Mrs. Klumb, a ward of the court, to see that she was supported and maintained for the remainder of her natural life.
It was equitable, just, proper and reasonable that the Chancellor before severing and dissolving the bonds of matrimony existing between Mr. and Mrs. Klumb, do all possible to see that Mr. Klumb, the husband at the time Mrs. Klumb, the wife suffered her disability, support and maintain her for her natural life. That is what the Chancellor in this case attempted to do when he required a $25,000 performance bond and a $25,000 life insurance policy with the ward of the court, who was also the incompetent wife, as the beneficiary.
As to the question of whether the amount of the performance bond and insurance policy are excessive, this Court notes that this question was raised for the first time on appeal to this Court. This is not what Section 2743, supra, contemplates, when it says:
"* * * and the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require." (Emphasis added.)
We hold that under the peculiar facts of this case, the Chancellor had the authority and the right to require the posting of a performance bond and the furnishing of a life insurance policy with the ward of the court and the incompetent wife of the appellant as the beneficiary.
The matter of fixing attorney's fees for services rendered in the trial court is appropriately entrusted to the sound discretion of the Chancellor. We can not say that the Chancellor abused this discretion when he allowed a $2,000 attorney's fee to the cross-complainant for her attorneys.
The appellee has moved for additional counsel fees for services rendered in this Court in the defense of said appeal. Ordinarily it is the custom of this Court to set the amount of the fee for representation in this Court at one-half of the fee in the lower court. We feel that such a fee would be excessive in this case, and we fix the amount of the additional fee for services rendered in this Court at $500.
Judgment affirmed and attorney's fee in this court fixed at $500.00.
ETHRIDGE, C.J., and JONES, PATTERSON and INZER, JJ., concur.