912 So.2d 1033 (2005)
James D. DURR, Jr., Appellant
v.
Beverly DURR (Hale), Appellee.
No. 2003-CA-01673-COA.
Court of Appeals of Mississippi.
April 5, 2005.
*1035 Luther Putnam Crull, attorney for appellant.
Willard L. McIlwain, Greenville, attorney for appellee.
Before KING, C.J., IRVING and BARNES, JJ.
IRVING, J., for the Court.
¶ 1. James Durr and Beverly Durr, now Beverly Hale, were divorced in July 1986.[1] Thereafter, Hale filed a petition for contempt, alleging that Durr had failed to abide by certain terms of the judgment of divorce. Hale specifically alleged that Durr had failed to maintain a life insurance policy with the parties' son as beneficiary, and had failed to pay certain medical and educational expenses in accordance with the judgment of divorce. The chancellor entered an order finding Durr in contempt and ordered him to pay Hale's attorney fees. Aggrieved by the chancellor's decision, Durr appeals and asserts that the chancellor erred in (1) failing to find Hale's claim for payment of private school tuition and expenses barred under the doctrines of equitable estoppel and/or laches, (2) finding him in contempt for failure to pay private school tuition and expenses, (3) finding him in contempt for failure to pay certain medical expenses, (4) *1036 failing to find Hale in contempt for failure to abide by the visitation provision in the judgement of divorce, and (5) ordering him to pay Hale's attorney fees. Finding no reversible error, we affirm the chancellor's findings.

FACTS
¶ 2. In 1986, Durr and Hale were granted a divorce on the ground of irreconcilable differences. The parties were granted joint legal custody of their minor son, James Waid, with Hale having physical custody and Durr having reasonable visitation.[2] The judgment of divorce provided that Durr maintain Waid as the beneficiary of a life insurance policy and pay one-half of Waid's educational and medical expenses.
¶ 3. In March 2003, Hale filed a petition for contempt against Durr alleging that Durr was in arrears on his obligations under the judgment of divorce. Hale also requested an award of attorney fees. In response to the petition, Durr filed an answer and counterclaim alleging that Hale's claims against him were barred under the doctrines of laches and/or equitable estoppel. Durr also alleged that Hale's claim was barred under the "clean hands" doctrine because she had failed to abide by the visitation provision in the judgment of divorce.[3]
¶ 4. In June 2003, a contempt hearing was held on the issues presented to the court. After hearing testimony from both parties and considering evidence presented to the court, the chancellor dismissed Durr's claim of contempt against Hale, but found Durr in contempt of the judgment of divorce. The chancellor also found that Durr was in arrears on his obligation to pay his share of the minor child's medical and educational expenses.[4] The chancellor further awarded Hale $1,500 in attorney fees. Additional facts will be related during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

Standard of Review
¶ 5. "[This Court's] scope of review in domestic relations matters is limited." Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss.1997). "[We] will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." Id. (quoting Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). "In other words, on appeal [we] are required to respect the findings of fact by the chancellor supported by credible evidence and not manifestly wrong." Sandlin, (699 So.2d at 1203) (citing Ferguson, 639 So.2d at 930).

(1) Private School Tuition
¶ 6. We combine for discussion Durr's first two issues since they are interrelated. Durr's first argument is that Hale's claim for payment of Waid's private school tuition and expenses is barred under the doctrines of equitable estoppel and/or laches. Durr argues that Hale waited more than ten years before filing a claim demanding the tuition payments.
¶ 7. At the time of the parties' divorce, Waid was three years old and was enrolled *1037 in a private preschool. The record reveals that the agreement, which the parties executed pursuant to their obtainment of a divorce on the ground of irreconcilable differences and which was incorporated into the judgment of divorce, provides for the following with respect to Waid's education:
The child will start nursery school in the fall and the husband agrees to be responsible for one-half of all fees and expenses related to nursery school and shall further be responsible for one-half of all educational costs for each school that the child attends thereafter.
¶ 8. During the contempt hearing, Hale testified that although Durr paid his share of Waid's nursery school tuition, he failed to pay his one-half share of Waid's tuition while the child was enrolled in private school in the fourth through twelfth grades. Both parties presented conflicting testimony as to when Hale first demanded that Durr assist with Waid's tuition. Hale testified that she first approached Durr regarding the tuition payments when Waid first began attending private school in the fourth grade. Durr, however, testified that Hale did not request that he help pay Waid's private school tuition, and her attorney did not demand payment of the tuition while Waid was enrolled in private school. Durr testified that he first received a letter from Hale's attorney demanding payments for the tuition payments in October 2002, when Waid was in his second year of college.[5]
¶ 9. We first note that the chancellor did not specifically rule on the affirmative defenses raised in Durr's answer following the conclusion of the contempt hearing, and Durr failed to bring the matter to the chancellor's attention. After the chancellor entered her order disposing of Hales's petition for contempt and Durr's counterclaim for contempt, Durr again failed to bring to the chancellor's attention that she had not addressed the affirmative defenses raised by him. Under this state of the facts, we find that Durr has waived any right to argue these issues on appeal. See Rushing v. State, 711 So.2d 450, 456(¶ 17) (Miss.1998) (holding that failure to obtain a ruling from the court on motions constitutes a waiver of same); Allgood v. Allgood, 473 So.2d 416, 423 (Miss.1985) (holding that "[a]s a prerequisite to obtaining review [on appeal] it is incumbent upon a litigant that he not only plead but press his point in the trial court"). However, assuming arguendo that the issues are preserved for appellate review, we find no merit in them as will be explained later in this opinion.
¶ 10. The law is clear that "child support payments vest in the child as they accrue, [and] [o]nce they have become vested, just as they cannot be contracted away by the parents, they cannot be modified or forgiven by the courts." Houck v. Ousterhout, 861 So.2d 1000, 1002(¶ 9) (Miss.2003) (citing Tanner v. Roland, 598 So.2d 783, 786 (Miss.1992)). "Each payment that becomes due and remains unpaid `becomes "a judgment" against the supporting parent.'" Id. (quoting Tanner, 598 So.2d at 786). "The only defense thereto is payment." Houck, 861 So.2d at 1002 (citing Tanner, 598 So.2d at 786).
¶ 11. According to the judgment of divorce, Durr was obligated to pay one-half of all of Waid's educational expenses. This also included his private school tuition payments. See Southerland v. Southerland, 816 So.2d 1004, 1006(¶ 11) (Miss.2002) (holding that pre-college school tuition should be treated as a part of child support). As a result, the tuition payments became a judgment against Durr each *1038 month he failed to make the payments. Based on a logical extrapolation of the law enunciated in Houck, Durr's obligation to make these payments cannot be excused by Hale's tardiness in seeking enforcement of his obligation to pay.
¶ 12. Further, the law is clear that laches does not apply if the action is not barred by the statute of limitations. Greenlee v. Mitchell, 607 So.2d 97, 111 (Miss.1992). Here, Waid was still a minor when Hale initiated the contempt action. Consequently, the statute of limitations had not run on Durr's support obligations. Miss.Code Ann. § 15-1-59 (Rev.2003). It therefore follows that even if Durr had obtained a ruling on his affirmative defense of laches, it would have availed him naught. Having disposed of the laches issue, we point out that Durr does not argue that Hale did not have standing to bring the contempt action. He simply argues that she waited too long to bring the action. Even if he had raised the issue, however, we would find such contention to be without merit, for it is well settled law in this State that child support arrearage may be pursued against the defaulting parent by either the child or the custodial parent. Ladner v. Logan, 857 So.2d 764, 771(¶ 22) (Miss.2003).
¶ 13. Durr also argues that Hale is equitably estopped from bringing the contempt action. "Equitable estoppel," as Durr points out in his brief, "is generally defined as the `principle by which a party is precluded from denying any material fact, induced by his words or conduct, upon which a person relied, whereby the person changed his position in such a way that injury would be suffered if such denial or contrary assertion was followed.'" Koval v. Koval, 576 So.2d 134, 137 (Miss.1991).
¶ 14. It is well settled law, as we discussed above, that child support is for the benefit of the minor. The custodial parent is only a conduit for the support. Therefore, it follows that no action or inaction on the part of the custodial parent can relieve the defaulting parent of that parent's obligation to pay support. Moreover, even if we were to find, which we do not, that equitable estoppel might be appropriate in child support cases, we would likewise find that Durr failed to meet the requirements for its application in this case. He has not shown how he changed his position in such a way that he would suffer injury if Hale is allowed to assert his lack of compliance with the judgment of divorce. In a feeble attempt to show that all of the conditions for the application of the doctrine of equitable estoppel exist, Durr argues that he is facing jail time if the arrearage is not paid. This is hardly the type of injury that is contemplated as a condition for the application of "equitable estoppel."
¶ 15. Further, Durr does not contend that Hale ever informed him that he did not have to pay for Waid's private school. Rather, his argument, as we have already noted, is that she just waited too long to assert the claim for it. In other words, Durr's position is that Hale's inaction in timely pressing the private school tuition, justifiably led him to believe that he did not have to pay it notwithstanding the clear requirements of the judgment of divorce. Surely, Durr knew that any changes to, or modifications of, the judgment of divorce would have to be made by the court in order for them to be enforceable. Therefore, we find this issue lacks merit.
¶ 16. Durr next argues that the chancellor committed manifest error in finding him in wilful contempt for failing to pay Waid's private school tuition and expenses. He claims that his failure to pay *1039 the tuition was justified in light of Hale's inactions, representations, and silence.[6]
¶ 17. "The purpose of civil contempt is to enforce or coerce obedience to the orders of the court." Lahmann v. Hallmon, 722 So.2d 614, 620(¶ 19) (Miss.1998) (citing Jones v. Hargrove, 516 So.2d 1354, 1357 (Miss.1987)). Contempt matters are committed to the substantial discretion of the chancellor. Lahmann, 722 So.2d at 620(¶ 19) (citing Shelton v. Shelton, 653 So.2d 283, 286 (Miss.1995)). "[We] will not reverse a [finding of contempt] where the chancellor's findings are supported by substantial credible evidence." Varner v. Varner, 666 So.2d 493, 496 (Miss.1995) (citing Shipley v. Ferguson, 638 So.2d 1295, 1297 (Miss.1994)).
¶ 18. In a contempt action, when the party entitled to receive support introduces evidence that the party required to pay the support has failed so to do, a prima facie case of contempt has been made. Lahmann, 722 So.2d at 620(¶ 19) (citing Guthrie v. Guthrie, 537 So.2d 886, 888 (Miss.1989)). At this point, the burden shifts to the paying party to show an inability to pay or other defense. Lahmann, 722 So.2d at 620(¶ 19) (citing Duncan v. Duncan, 417 So.2d 908, 909-10 (Miss.1982)).
¶ 19. We find that substantial evidence exists in the record to support the chancellor's finding of contempt due to Durr's failure to pay his share of Waid's private school tuition. In addition to the introduction of the judgment of divorce obligating Durr to make the tuition payments, Hale presented evidence that Durr had failed to comply with the decree by not making the tuition payments. Durr in turn failed to present sufficient evidence to rebut Hale's prima facie case of contempt.[7] As a result, Durr's argument on this issue fails.

(2) Contempt for Failure to Pay Medical Expenses
¶ 20. In his third assignment of error, Durr challenges the chancellor's ruling finding him in contempt for failure to pay Waid's medical expenses. Durr claims that he paid all medical, optical, and drug bills that Hale submitted to him.
¶ 21. The chancellor found Durr in contempt for failing to abide by the judgment of divorce which provided that he pay "one-half of all bills for medical treatment of the minor child which are not paid by the provisions of a policy of medical and hospitalization insurance...." The chancellor further found that Durr was in arrears for medical costs in the amount of $4,102.39. Although Durr claims that he paid all medical, optical, and drug bills submitted to him by Hale, during the hearing he could only provide proof that he had paid one bill. As a result, we find that the chancellor did not err in finding Durr in contempt for failing to pay his share of Waid's medical expenses.

(3) Visitation Provision
¶ 22. Durr contends that the chancellor should have found Hale in contempt of the visitation provision of the judgment of divorce due to her failure to promote visitations between him and Waid. Hale counters that she took Waid, on numerous occasions, to visit Durr and that Durr has failed to present any evidence to *1040 show that she interfered with his visitation rights.
¶ 23. "Contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstances and both temporal and visual proximity, is infinitely more competent to decide the matter than [this Court is]." Varner, 666 So.2d at 496 (quoting Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994)). Here, the chancellor dismissed Durr's claim of contempt against Hale, and we decline to disturb the chancellor's exercise of discretion on this issue. Evidently, after hearing testimony from both parties, and observing their demeanor on the witness stand, the chancellor was not persuaded that Hale had violated the judgment of divorce's visitation provision. Therefore, Durr's argument is without merit.

(4) Attorney Fees
¶ 24. Finally, Durr contends that the chancellor erred in awarding Hale $1,500 in attorney fees. Hale counters that the chancellor's award of attorney fees was appropriate because of Durr's willful contempt.
¶ 25. "In a contempt proceeding, the trial court has discretion to award reasonable attorney's fees to make the plaintiff whole and to reinforce compliance with the judicial decree." Hinds County Bd. of Supervisors v. Common Cause of Mississippi, 551 So.2d 107, 125 (Miss.1989) (citing Sebastian v. Texas Dep't. of Corrections, 558 F.Supp. 507 (S.D.Texas 1983)). One of the purposes for awarding attorney fees is to compensate the prevailing party for losses sustained by reason of the defendant's noncompliance. Hinds County Bd. of Supervisors, 551 So.2d at 125.
¶ 26. Hale was successful on her motion for contempt. Therefore, it follows that she is eligible for an award of attorney fees. As a result, we find no abuse of discretion in the chancellor's award of attorney fees. This issue is without merit.
¶ 27. In responding to Durr's argument that the trial court erred in requiring him to pay Hale's attorney fees, Hale makes the following statement: "Attorney fees and cost of litigation are liable at both trial and appellate levels. Appellee, to that end, prays that she be allowed reasonable attorney fees as the appellate level." In the conclusion portion of her brief, Hale has a one-sentence request for an award of attorney fees on appeal "to help ... defray the costs caused by James's [Durr's] contempt." She does not argue that she should be awarded attorney fees pursuant to Rule 38 of Mississippi Rules of Appellate Procedure for the prosecution by Durr of a frivolous appeal, nor does she cite any authority in support of her two-sentence request. Further, she does not contend that she is financially unable to pay her attorney fees on appeal.
¶ 28. We and the Mississippi Supreme Court have held on any number of occasions that the failure to cite authority in support of an issue is grounds for our refusal to consider the issue. See, e.g., Webb v. Desoto County, 843 So.2d 682, 685(¶ 10) (Miss.2003); Robinson v. State, 726 So.2d 189, 194(¶ 20) (Miss.Ct.App. 1998).
¶ 29. The Concur In Part, Dissent In Part (CIP-DIP) opinion argues that we err in not awarding additional attorney's fees in response to Hale's two-sentence request for them. In support of its position, the author of the CIP-DIP supplies the authority which Hale failed to supply. The CIP-DIP also takes issue with our assertion that Hale failed to cite any authority in support of her request for attorney fees at the appellate level and points out that, in her brief, Hale cited one of our *1041 cases, Mixon v. Mixon, 724 So.2d 956 (Miss.Ct.App.1998). We agree that Hale directed us to Mixon, but that was in response to Durr's contention that the chancellor erred in requiring him to pay Hale's attorney fees in the trial court. Mixon does not address or deal with attorney fees at the appellate level. We also may add that Hale, citing Smith v. Smith, 545 So.2d 725 (Miss.1989) and Stauffer v. Stauffer, 379 So.2d 922 (Miss.1980), also acknowledges in her brief that "[t]he granting of attorney fees to either party as the expense of litigation in a motion for contempt is within the sound discretion of the court."
¶ 30. While we recognize that attorney fees may be awarded on appeal and that it is our established practice to award one half the amount awarded in the trial court, we decline to assess them here, given the unusually long time interval between Durr's noncompliance with the judgment of divorce and Hales's assertion of her rights under the judgment of divorce. Were we to determine that Durr's appeal is frivolous, we would be obligated under Rule 38 to grant some attorney fees to Hale. However, we do not find Durr's appeal to be frivolous. Further, we do not find that the cases cited by the CIP-DIP require that the successful party in a contempt action must always be awarded attorney fees on appeal.
¶ 31. In the first case cited by the CIP-DIP, Grant v. Grant, 765 So.2d 1263 (Miss. 2000), the Mississippi Supreme Court granted attorney fees on appeal in a child custody and support case where the mother, who was the prevailing party in the trial court, alleged on appeal that she was "unable to pay her attorney for the services rendered in connection with her defense of [the] appeal." Id. at 1268(¶ 19). In the second case cited, Shorter v. Shorter, 740 So.2d 352, 358(¶ 30) (Miss.Ct.App. 1999), a separate maintenance action, the appellant did not contest the attorney fees which were being sought pursuant to the defense of the appeal. Id. at 358(¶ 30). In the third case cited, Clements v. Young, 481 So.2d 263 (Miss.1985), a contempt case, the mother moved for an award of attorney fees on appeal. The Mississippi Supreme Court allowed the fees. In the fourth case cited, Schilling v. Schilling, 452 So.2d 834 (Miss.1984), a divorce case, the proponent of the award of attorney fees filed a motion for same with the supreme court. Id. at 836. In the fifth case cited, Spradling v. Spradling, 362 So.2d 620 (Miss.1978), a case involving modification of an award of alimony, a motion for attorney fees was also filed. Id. at 625. In the sixth case cited, Dixie Contractors, Inc. v. Ballard, 249 So.2d 653 (Miss.1971), involving a suit on a public construction surety bond which provided for reasonable attorney fees, the Mississippi Supreme Court simply enforced the provisions of the surety bond and granted attorney fees for the appeal. The final case cited, Klumb v. Klumb, 194 So.2d 221 (Miss. 1967), involved a divorce where the wife was confined in the Mississippi State Hospital at Whitfield. Id. at 222. On behalf of the wife, the guardian moved for attorney fees on appeal. The fees were allowed. Id. at 225.
¶ 32. In another case, Monroe v. Monroe, 745 So.2d 249 (Miss.1999), which was not cited by Hale or the CIP-DIP, the Mississippi Supreme Court denied attorney fees on appeal. In Monroe, the appellee sought attorney's fees and costs for her second appeal to the supreme court. The chancellor awarded her $1,050 at the trial level, and, on appeal, she sought an amount equal to what the chancellor had awarded, or, of at least half that amount plus costs. Id. at 253(¶ 17). In denying the appellee's request, the court said:

*1042 Attorney fees are appropriate only where a party is financially unable to pay them. Creekmore [v. Creekmore], 651 So.2d [513,] at 520 [Miss.1995]. "`The fee should be fair and should only compensate for services actually rendered after it has been determined that the legal work charged for was reasonably required and necessary.'" id. at 520 (quoting Dunn v. Dunn, 609 So.2d 1277, 1286 (Miss.1992)). Mrs. Monroe presented no evidence, however, of the fees charged by her attorney or of the amount of work involved. We therefore find that she is not entitled to attorney fees.
Id. at 253(¶ 18).
¶ 33. Turning again to the cases cited by the CIP-DIP, we first observe that only one of the cases cited involved a contempt action as does our case. Two of the cases involved a divorce action where the issue is always whether the party seeking attorney fees has the financial ability to pay. A fourth case involved a contract action in which attorney fees were specifically provided for in the contract. Of the remaining three cases, one involved a complaint for separate maintenance, another was a child custody and support case in which the issues of custody and support had not been previously adjudicated, and the final case involved modification of an alimony provision. As we have already observed, none of the cited cases stands for the proposition that attorney fees always must be allowed on appeal. They simply announce the amount which is usually awarded when an award is appropriate. They set forth no criteria for consideration of the award. Further, in each of the cases the party seeking the fees either filed a motion or moved, in some appropriate manner, for the award of fees. Here, as we have already noted, Hale made a two-sentence request without further averments or citation of authority.
¶ 34. We reiterate what we have already determined, and that is, given Hale's seventeen-year delay in seeking to enforce the provisions of the judgment of divorce, her failure to cite any authority in support of her meager request for attorney fees on appeal, and our finding that Durr's appeal is not frivolous, we decline to award her any additional attorney fees.
¶ 35. THE JUDGMENT OF THE CHANCERY COURT OF HUMPHREYS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
CHANDLER, BARNES, AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. BRIDGES, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY LEE, P.J., MYERS AND GRIFFIS, JJ.
BRIDGES, P.J., Concurring in Part, Dissenting in Part:
¶ 36. I concur with the opinion of the majority in affirming the judgment of the lower court as to each of Durr's assignments of error. However, I respectfully dissent as to the majority's decision to deny Hale's request for attorneys' fees on appeal.
¶ 37. The majority appears to predicate the denial of Hale's request on the Court's hesitation to hold that Durr's appeal was indeed frivolous under M.R.A.P. 38. Although I agree that Hale refrains from arguing, or even mentioning for that matter, that she should be awarded attorneys' fees pursuant to said rule, I am convinced, from my understanding of Mississippi jurisprudence, that an appeal need not be found frivolous in order for an award of attorneys' fees to be proper. See Black v. *1043 Black, 741 So.2d 299, 302(¶ 9) (Miss.Ct. App.1999).
¶ 38. Furthermore, the majority observes that Hale became eligible for an award of attorneys' fees by virtue of the fact she succeeded in her petition for contempt. While I agree with this general observation, I further believe, upon considering that the chancellor declared Durr in wilful contempt for defying various orders and decrees of the court, that Hale not only qualified for an award of attorneys' fees but that she was entitled to such award.
¶ 39. Mississippi's case law reveals that a finding of contempt for wilfully violating an order or decree of the court minimizes the discretion vested in a chancellor concerning an award of attorneys' fees. The factors requiring consideration when presented with the issue of attorneys' fees were outlined by the Mississippi Supreme Court in McKee v. McKee, 418 So.2d 764, 767 (Miss.1982), but in Mixon v. Mixon, this Court explained that the McKee factors need not be established "for a contemnee to recover attorney's fees related to pursuing actions where a contemnor has wilfully violated a lawful order of the court. To hold otherwise would cause no peril to those restrained from certain conduct if they violate the orders of a court." Mixon v. Mixon, 724 So.2d 956, 964(¶ 29) (Miss. Ct.App.1998). The supreme court has also proclaimed that a party successful on a petition of contempt must be awarded attorneys' fees. In Pearson v. Hatcher, the court "conclude[d] that the appellant was entitled to an award of attorney's fees" and that if the appellee on rehearing was "found to be in contempt of court for failure to abide by the terms of the former decree, ... it necessarily follows that the attorney's fee should be assessed against the person violating the decree and surely not against the party seeking to uphold it." Pearson v. Hatcher, 279 So.2d 654, 656 (Miss.1973). The court continues saying that "[t]he dignity and strength of the Court through the enforcement of its decrees require nothing less." Id.
¶ 40. From my research of Mississippi law, I have found nothing from which to conclude, or even infer, that attorneys' fees on appeal may only be awarded to a party following a proper request with citation to authority by that party. My failure to find such law, however, is irrelevant because, after noting in her brief that attorneys' fees and costs of litigation may be awarded at both the trial and appellate levels, Hale states that, "Appellee, to that end, prays that she be allowed reasonable attorney fees at the appellate level." In support of her request, she cites Mixon v. Mixon. Accordingly, I find no fault by Hale as a basis for denying said requested relief. Moreover, in recognizing that the general practice of the appellate courts, when a party has been awarded attorneys' fees in the lower courts, is to award that party one-half of that amount on appeal, I would award Hale such an amount on appeal. See Grant v. Grant, 765 So.2d 1263, 1268(¶ 19) (Miss.2000); Shorter v. Shorter, 740 So.2d 352, 358(¶ 30) (Miss.Ct.App. 1999); Clements v. Young, 481 So.2d 263, 271 (Miss.1985); Schilling v. Schilling, 452 So.2d 834, 836 (Miss.1984); Spradling v. Spradling, 362 So.2d 620, 625 (Miss.1978); Dixie Contractors, Inc. v. Ballard, 249 So.2d 653, 657 (Miss.1971); Klumb v. Klumb, 194 So.2d 221, 225 (Miss.1967).
LEE, P.J., MYERS AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.
NOTES
[1] For the sake of clarity, we will refer to Beverly by "Hale," her new married name.
[2] The minor child's name is spelled "Wade" in the parties' brief. However the judgment of divorce has the child's name spelled "Waid." We use the spelling employed in the judgment of divorce.
[3] At the time of the contempt hearing, Waid was twenty years old.
[4] Durr did not appeal the chancellor's disposition of the issue concerning the life insurance policy.
[5] Durr acknowledges that he is responsible for one-half of Waid's college tuition.
[6] Durr argues that because Hale did not demand that he help pay Waid's private school tuition, he was justified in believing that he did not have an obligation to assist with the payments.
[7] Durr did not argue in the trial court, and does not argue here, that he lacked or lacks the financial ability to make the required payments.