# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CP-00820-SCT

*ARLIN GEORGE HATFIELD, III*

*v.*

*DEER HAVEN HOMEOWNERS ASSOCIATION, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/2016 |
| TRIAL JUDGE: | HON. ROBERT GEORGE CLARK, III |
| TRIAL COURT ATTORNEYS: | STEVEN H. SMITH |
| | MICHAEL SCOTT JONES |
| | JAMES L. MARTIN |
| | JAMES L. PETTIS, III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | ARLIN GEORGE HATFIELD, III (PRO SE) |
| ATTORNEYS FOR APPELLEE: | TIMOTHY JAMES ANZENBERGER |
| | MICHAEL SCOTT JONES |
| | JAMES L. MARTIN |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/14/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     A homeowner appeals an award of attorney fees associated with a complaint filed against him for injunctive relief to enforce a neighborhood's restrictive covenants.  We affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.     On October 31, 2013, the Deer Haven Owners Association filed a Complaint for Mandatory Injunction and Other Relief against Arlin George Hatfield III in the Chancery

Court of Madison County, claiming Hatfield—a homeowner in the subdivision—had violated the subdivision's restrictive covenants by erecting pens for various fowl without the covenants' required prior approval, and that Hatfield's fowl had violated the covenants' prohibition against noxious or offensive activities by roaming around the subdivision and making loud noises. The Association sought an injunction ordering Hatfield to comply with the covenants and an award of attorney fees.[1]

¶3.     Hatfield answered and filed a counterclaim seeking a declaratory judgment. He asked the chancellor to declare that his birds were domestic animals which could be kept in Deer Haven consistent with the covenants and that the pens were not improvements within the meaning of the covenants. Hatfield also sought attorney fees.

¶4.     On June 29, 2015, the Association filed an amended complaint alleging that the Madison County Board of Supervisors had rendered a decision finding that "Hatfield's keeping and raising of birds/fowl on his lot [was] a violation of the Madison County Zoning Ordinance." And according to the Association, Hatfield's failure to comply with county zoning ordinances also violated the covenants.

¶5.     The parties filed motions for summary judgment and the chancellor held a hearing, following which the chancellor granted the Association's motion, found that Hatfield had

---

[1] Section 10.03 of the Declaration of Covenants, Conditions and Restrictions for Deer Haven provides:

> In any legal or equitable proceeding for the enforcement or to restrain the violation of this Declaration or any provisions hereof by reference or otherwise, the prevailing party or parties shall also be entitled to an award of reasonable attorney's fees, in such amount as may be fixed by the court in such proceeding.

violated the Madison County Zoning Ordinance, and concluded that the Association was entitled to an injunction ordering him to remove the fowl from his property. The chancellor also concluded the Association was entitled to recover attorney fees, but that a hearing was necessary to determine the appropriate amount. Finally, the chancellor found that triable issues of fact remained as to whether the pens were a improvement erected in violation of the covenants. But the parties later filed an agreed judgment stating any issues regarding the pens were moot because Hatfield had removed them from the property.

¶6.     On December 15, 2015, the chancellor held a hearing on the issue of attorney fees and later denied fees for either party. The Association moved for reconsideration, arguing a Mississippi Court of Appeals decision held it was an abuse of discretion to deny attorney fees when provided for in restrictive covenants. Hatfield responded, arguing that, while the covenants did provide for the prevailing party to recover attorney fees, the amount of those fees was left to the chancellor's discretion, and the chancellor was justified in awarding the Association no fees because a large portion of the fees were incurred before the Association filed its amended complaint to add the only ground upon which it prevailed. Hatfield also argued the Association had failed to present sufficient evidence to support an award of attorney fees because the billing statements were insufficiently definite to show which fees corresponded with the prevailing claim.

¶7.     The chancellor held a hearing on the motion for reconsideration. After the hearing, the chancellor granted the motion and awarded the Association $50,250 in attorney fees. The chancellor rejected Hatfield's argument that the Association could not recover fees incurred

before it filed the amended complaint. According to the chancellor, the original complaint sought to have the fowl and pens removed for violations of the covenants, and the Association prevailed on that argument. Hatfield appealed.

**ANALYSIS**

¶8. On appeal, Hatfield primarily argues the chancellor erred by awarding the Association attorney fees. But Hatfield first devotes a significant portion of his brief to accusing the chancellor and the Association's attorneys of misconduct. In his record excepts, Hatfield has provided a "Motion for Mistrial" which he filed in the chancery court after this case already had been appealed to this Court. Attached to the motion is what appears to be a judicial performance complaint against the chancellor, bar complaints against the Association's attorneys, and a bar complaint against the Association's president, who also is an attorney. The argument in Hatfield's brief mirrors that in the judicial performance complaint.

¶9. The Association has filed a motion to strike Hatfield's brief and record excerpts, arguing they should be struck because (1) they contain language disrespectful to the trial judge, (2) the "Motion for Mistrial" and its exhibits are not in the record on appeal, and (3) these arguments—which are ethical complaints—must be addressed through the Mississippi Bar Association and the Mississippi Commission on Judicial Performance. On March 21, 2017, Justice Chamberlin entered a single-justice order passing this motion for consideration with the merits.

¶10. This Court finds that the motion to strike should be granted. Mississippi Rule of Appellate Procedure 28(l) provides that "[a]ny brief containing language showing disrespect

or contempt for the trial court will be stricken from the files, and the appropriate appellate court will take such further action as it may deem proper."[2] As the Association argues, Hatfield's brief is full of language disrespectful to the chancellor.

¶11. Hatfield essentially argues that every time the chancellor ruled against him, the ruling was purely the result of the chancellor's bias. Hatfield never identifies any particular conflict of interest or any evidence of bias. He also never provides any argument or citation to suggest any of the chancellor's rulings—except the award of attorney's fees—were legally incorrect. Further, nothing in the record reflects bias on the part of the chancellor. Instead, Hatfield simply lodges speculative claims of bias without foundation, often employing boldface and all-capital letters when describing the chancellor's "prejudice."

¶12. Further, the Association correctly points out that this portion of Hatfield's brief and record excepts is based on matters outside the record on appeal. Mississippi Rule of Appellate Procedure 10(a) provides that "[t]he parties shall designate the content of the record pursuant to this rule, and the record shall consist of designated papers and exhibits filed in the trial court, the transcript of proceedings, if any, and in all cases a certified copy of the docket entries prepared by the clerk of the trial court."[3] Rule 30(a) then provides that

---

[2] Miss. R. App. P. 28(l).

[3] Miss. R. App. P. 10(a).

"[a]ppeals shall be on the record as designated pursuant to Rule 10."[4] "Mississippi appellate courts may not consider information that is outside the record."[5]

¶13. Here, Hatfield's "Motion for Mistrial" and its supporting documentation are not in the record. In fact, the record was filed in this Court October 17, 2016. These documents were not filed in the chancery court until February 6, 2017. They are not properly part of the record before this Court and cannot be considered. Likewise, Hatfield's ethical complaints against the Association's attorneys are based on his belief that they threatened the chancellor in order to persuade him to allow an amended complaint. But no such threat is reflected in the record.

¶14. Finally, as noted above, Hatfield cites no authority to show that any of the chancellor's rulings—attorney fees aside—was erroneous. "It is the duty of the briefing party to cite to authority which supports its argument. The Court 'considers assertions of error not supported by citation or authority to be abandoned.'"[6] Instead, Hatfield focuses this portion of his brief not on legal error, but on his belief that the chancellor violated the Canons of Judicial Conduct and that the attorneys violated the Rules of Professional Conduct. These matters, if at all, should be addressed through disciplinary proceedings, not a direct appeal.

### *Attorney Fees in the Trial Court*

---

[4] Miss. R. App. P. 30(a).

[5] *Hardy v. Brock*, 826 So. 2d 71, 76 (Miss. 2002) (citing *Dew v. Langford*, 666 So. 2d 739, 746 (Miss. 1995)).

[6] *Russell Real Prop. Servs., LLC v. State*, 200 So. 3d 426, 430 (Miss. 2016) (citing Miss. R. App. P. 28(a)(6); quoting *McNeil v. Hester*, 753 So. 2d 1057, 1075 (Miss. 2000)).

¶15.     This Court reviews an award of attorney fees for an abuse of discretion.[7] The award

must be supported by credible evidence, but determining a reasonable fee is left to the

discretion of the trial judge.[8]

¶16.     "This Court has stated 'unless a statute or contract provides for the imposition of

attorney fees, they are not recoverable.'"[9] Here, the chancellor based the award of attorney

fees to the Association on Section 10.03 of the Declaration of Covenants, Conditions and

Restrictions for Deer Haven, which provides:

> In any legal or equitable proceeding for the enforcement or to restrain the
> violation of this Declaration or any provisions hereof by reference or
> otherwise, the prevailing party or parties shall also be entitled to an award of
> reasonable attorney's fees, in such amount as may be fixed by the court in such
> proceeding.

¶17.     Hatfield does not argue this provision is unenforceable.  In fact, Hatfield sought

attorney fees under this provision in the trial court.   Nor does Hatfield argue the

---

[7] *Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 486 (Miss. 2002) (citing *Regency Nissan, Inc. v. Jenkins*, 678 So. 2d 95, 103 (Miss. 1995)).

[8] *Cook*, 832 So. 2d at 486 (citing *Regency Nissan, Inc.*, 678 So. 2d at 103; quoting *Gilchrist Tractor Co. v. Stribling*, 192 So. 2d 409, 418 (Miss. 1966); *Mauck v. Columbus Hotel Co.*, 741 So. 2d 259, 269 (Miss. 1999)).

[9] *Hearn v. Autumn Woods Office Park Prop. Owners Ass'n*, 757 So. 2d 155, 164 (Miss. 1999) (quoting *Grisham v. Hinton*, 490 So. 2d 1201, 1205 (Miss. 1986)).

Association's attorneys billed unreasonable rates or hours.[10] Instead, Hatfield argues the chancellor erred for two other reasons.

¶18.    First, Hatfield argues that the chancellor erred in his application of Section 10.03. Hatfield points out that Section 10.03 allows recovery by the prevailing party, but leaves the amount to be determined by the court.[11] Hatfield argues that, under this provision, the Association could not recover any fees expended before it filed its amended complaint because the amended complaint alleged the only ground upon which the Association prevailed: Hatfield's failure to comply with county zoning ordinances. Further, Hatfield argues that the chancellor should have awarded no attorney fees at all because the Association failed to present sufficient evidence to prove which fees related particularly to the zoning ordinance theory.

---

[10] *See Cook*, 832 So. 2d at 486 (quoting Miss. R. Prof'l Conduct 1.5) ("'(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.'").

[11] Hatfield argues that this makes the attorney fees provision permissive, rather than mandatory. That distinction, for purposes of this appeal, is irrelevant. The chancellor awarded attorney fees. Hatfield asks this Court to reverse the award. Whether the chancellor had to award them, or exercised his discretion to do so, is irrelevant because, to prevail on appeal, Hatfield must show that the chancellor could not do so.

¶19.    Hatfield relies on two Mississippi Court of Appeals opinions. *A & F Properties, LLC v. Lake Caroline, Inc.* concerned a dispute surrounding A & F's contract to build and run a golf course for the Lake Caroline subdivision.[12]   There, the suit involved three distinct matters.   First, A & F claimed Lake Caroline failed to construct an adequate road into the golf course.[13]   Second, under the contract, Lake Caroline was to convey ten lots in the neighborhood to A & F.[14]   The parties, however, disputed the method of selecting those lots.[15]   Finally, the contract required A & F "to execute a 'Maintenance Deed of Trust' in favor of Lake Caroline that would serve as a permanent lien on the golf course property."[16] The parties had a third dispute concerning this obligation.[17]

¶20.    Lake Caroline prevailed on the lot-selection and deed-of-trust issues.[18]   But A & F prevailed on the road-construction issue.[19]   The contract at issue provided for an award of attorney fees:

> If it becomes necessary to insure the performance of the terms and conditions of this Contract by any party hereto having to employ an attorney, then the

---

[12] *A & F Props., LLC v. Lake Caroline, Inc.*, 775 So. 2d 1276, 1278 (Miss. Ct. App. 2000).

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.*

9

party admitting default, or the party adjudicated as the defaulting party by a court of competent jurisdiction, shall pay reasonable attorneys' fees and the court cost incurred, if any.[20]

¶21. On appeal, the Court of Appeals held that, under this provision, A & F could recover only attorney fees expended in litigating the road-construction issue—the only issue on which it prevailed.[21] The Court of Appeals also held that no attorney fees could be awarded because the proof presented at trial was insufficient to distinguish between the awardable attorney fees expended for the road-construction claim and those expended for other claims.[22]

¶22. Likewise, *Industrial and Mechanical Contractors of Memphis, Inc. v. Tim Mote Plumbing, LLC* concerned a dispute based on Industrial's contract with Mote as plumbing subcontractor for a commercial building construction project.[23] Industrial claimed that Mote had breached the contract in three ways.[24] "First, [Industrial] contended that Mote failed to properly 'tie-in' a water pipe, resulting in a leak beneath part of the parking lot."[25] "Second, evidence was also presented at trial alleging that Mote breached the contract by failing to properly compact the trenches in which Mote laid sewage and water pipes."[26]

---

[20] *Id.* at 1282–83.

[21] *Id.* at 1283.

[22] *Id.* at 1283–84.

[23] *Indus. and Mech. Contractors of Memphis, Inc. v. Tim Mote Plumbing, LLC*, 962 So. 2d 632, 634 (Miss. Ct. App. 2007).

[24] *Id.* at 634–35.

[25] *Id.*

[26] *Id.* at 635.

"Finally,[Industrial] asserted that Mote breached the contract when Mote employees punched holes in the sheetrock walls inside the building in an effort to locate water cutoff valves, requiring [Industrial] to repair the holes at [Industrial's] expense."[27]

¶23.     The chancellor found for Industrial on the first claim only, and denied Industrial's request for attorney fees.[28]     The contract had a provision providing for the recovery of attorney fees:

> If it becomes necessary for Contractor to employ an attorney to enforce its rights against Subcontractor, Subcontractor agrees to pay a reasonable attorney's fee to such attorney plus all costs of litigation incurred by Contractor.[29]

On appeal, the Court of Appeals applied the rule it articulated in *A & F Properties, LLC* and held that Industrial could not recover attorney fees for work related to the two claims on which it did not prevail.[30]

¶24.     Hatfield argues this case is analogous. According to Hatfield, the Association brought several claims against him: that he violated the restrictive covenant requiring prior approval to erect improvements, that he violated the restrictive covenant prohibiting noxious activities, and that he violated the restrictive covenant requiring compliance with all zoning ordinances. Because the chancellor's ruling in the Association's favor was based on only one of the three—compliance with zoning ordinances—Hatfield argues the Association was only

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 638.

[30] *Id.* at 638–39 (citing *A & F Props., LLC*, 775 So. 2d at 1282–83).

entitled to recover only fees expended in advancing that argument. And because the proof does not show which fees corresponded with which theory, he believes no fees should have been awarded. We disagree.

¶25. The covenant in question provides for the "prevailing party" to recover attorney fees "[i]n any legal or equitable proceeding for the enforcement or to restrain the violation of this Declaration or any provisions hereof by reference or otherwise." As the chancellor reasoned, the Association filed an equitable action for injunctive relief to enforce the covenants by having Hatfield's birds and pens removed from the property. The Association prevailed because it had obtained that relief. So we find that the chancellor correctly applied the plain language of the attorney-fees provision.

¶26. Hatfield next argues the chancellor erred by awarding attorney fees incurred by the attorney the Association's liability insurance carrier retained to defend against Hatfield's counterclaim. According to Hatfield, because the Association did not pay these sums—the insurer did—it cannot recover these sums.

¶27. The chancellor awarded the Association $50,250 in attorney fees and costs. The proof adduced at trial showed the Association paid or owed the attorney it retained—James L. Martin of Taggart, Rimes, & Graham—$29,477.12. The proof also established that the Association paid a $2,500 deductible for the work performed by the attorney its insurer retained—M. Scott Jones of Adams and Reese, LLP—who accrued $36,684 in fees excluding that deductible. Finally, the president of the Association testified that Jones's fees had been paid by the insurance company.

12

¶28. Because the combined amount owed by the Association for Martin's fees and the deductible is $31,977.12, at least $18,272.88 of the fees the chancellor awarded represents fees incurred by Jones and paid by the insurer. Hatfield argues that the Association cannot be awarded these fees it did not pay.

¶29. This Court will affirm if a trial judge's award of attorney fees is supported by credible evidence.[31] Here, the covenants provided that "the prevailing party or parties shall also be entitled to an award of reasonable attorney's fees, in such amount as may be fixed by the court in such proceeding." The covenants do not restrict the entitlement to an award only of attorney fees that are paid by the Association. Hatfield cited no authority to the chancellor—and he cites none here—that would require a reduction in the award of attorney fees based on who paid the fees. Indeed, under the facts here, we know of no authority that would require a reduction of the fees, even if they had not been paid at all. The covenants' only requirement is that the fees be reasonable.

### Attorney's Fees on Appeal

¶30. The Association has filed a motion for this Court to award attorney fees incurred in litigating this appeal. Where a contract provides for an award of attorney fees, fees are awarded in the trial court, and the appellee successfully defends that award on appeal, this Court has awarded fees incurred in litigating the appeal upon motion by the appellee.[32] In

---

[31] *Cook*, 832 So. 2d at 486 (citing *Regency Nissan, Inc.*, 678 So. 2d at 103; quoting *Gilchrist Tractor Co.*, 192 So. 2d at 418; *Mauck*, 741 So. 2d at 269).

[32] *See* *Knight v. McCain*, 531 So. 2d 590, 597 (Miss. 1988); *Dixie Contractors, Inc. v. Ballard*, 249 So. 2d 653, 657 (Miss. 1971).

13

*Dixie Contractors, Inc. v. Ballard*, this Court awarded "a fee for the services of his attorney on this appeal in the amount of one-half of that allowed by the trial court."[33]  The Association requests the same here; or $25,125.00.  While allowing attorney fees on appeal in an amount equal to one-half of the fees allowed by the trial court may not be fair and equitable in all cases, we find doing so here to be appropriate.  We think the better practice, however, would be for the party seeking attorney fees on appeal to file a motion in this Court, supported by affidavits and time records that establish the actual fees expended on appeal.

## CONCLUSION

¶31.    The judgment of the Chancery Court of Madison County is affirmed.  And this Court grants the appellee's motions to strike and for attorney fees on appeal in the amount of $25,125.00.

¶32.    **AFFIRMED.**

**WALLER, C.J., KITCHENS, KING, MAXWELL AND BEAM, JJ., CONCUR. CHAMBERLIN, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND COLEMAN, J.**

**CHAMBERLIN, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶33.    In response to the majority, I feel compelled to swoop in and kill two birds with one stone.  I am as happy as a lark to join the flock in affirming the chancellor in this case.  However, I must also spread my wings and dissent in part because I fear that the majority's award of $25,125 in appellate attorney's fees against a pro-se litigant—without any

---

[33] *Dixie Contractors, Inc.*, 249 So. 2d at 657.

evidentiary support in our record for the award—could become the goose that laid the golden egg. It doesn't take eagle eyes to see the problem with this approach. Therefore, I must cry "fowl."

¶34. The majority's caution that "the better practice . . . would be for the party seeking attorney fees on appeal to file a motion in this Court, supported by affidavits and time records that establish the actual fee expended on appeal" is correct. (Maj. Op. at ¶ 30). As a matter of fact, it is so much better that we should require it.

¶35. Our Court's past directives on awards of attorney's fees have been clear: "The court may not judicially note what is a reasonable fee and it certainly may not merely pull a figure out of thin air. Rather, the party entitled to recover a reasonable fee must furnish an evidentiary predicate therefor." *Key Constructors, Inc. v. H & M Gas Co.*, 537 So. 2d 1318, 1325 (Miss. 1989). *Key* found "in no uncertain terms" that "'reasonable attorney[']s fees' require[d] proof." *Id*. There must be an evidentiary predicate. *Sanford v. Jackson Mall Shopping Ctr. Co.*, 516 So. 2d 227, 230 (Miss. 1987).

¶36. I see no reason why an appellate award should be treated any differently than a trial award. While judicial economy might be served using this method on small awards or in circumstances where justice requires, the facts of this case present neither situation. I would find that appellate counsel, just like trial counsel, should have to "furnish an evidentiary predicate []for" an award of attorney's fees. *Key*, 537 So. 2d at 1325.

¶37.   Others may think my position bird-brained, but I sincerely believe that, once the chickens come home to roost, this opinion will be a feather in my cap.  Therefore, I dissent as to this issue.

**RANDOLPH, P.J., AND COLEMAN, J., JOIN THIS OPINION**.